**Dorothy Jean RAMSEY and Wayne A. Ramsey, Her Husband,**

v.

**MELLON NATIONAL BANK AND TRUST COMPANY, Appellant.**

No. 15067.

United States Court of Appeals Third Circuit.

Argued March 17, 1965.

Decided Sept. 15, 1965.

See also D.C., 231 F.Supp. 1; D.C., 33 F.R.D. 324.

Robert A. Doyle, Duff & Doyle, Pittsburgh, Pa., for appellant.

Samuel L. Goldstein, Suto, Goldstein, Balzarini & Walsh, Pittsburgh, Pa. (Alexander L. Suto, Pittsburgh, Pa., on the brief), for appellee.

Before McLAUGHLIN, HASTIE and SMITH, Circuit Judges.

McLAUGHLIN, Circuit Judge.

In this diversity personal injury tort action the jury found diversity of citizenship between the parties and verdicts in favor of the plaintiffs and against the defendant. The latter appeals.

The claim of the plaintiffs was that on August 18, 1961, Mrs. Ramsey was a customer of the defendant's branch bank at Aliquippa, Pennsylvania. On that day she walked into the bank and transacted her business. As she was leaving the premises she was either proceeding through the exit door or had moved through the door when she stepped on a mat in which the heel of one of her shoes became caught causing her to fall or be thrown down and to sustain resultant injuries. The issues of negligence of the bank, of contributory negligence and of the nature and extent of Mrs. Ramsey's injuries were all strongly contested. Prior to reaching those problems we are confronted with a major trial question arising out of the serious jurisdictional dispute in the case.

The complaint filed April 2, 1962, alleged that the plaintiffs were citizens of Florida and the defendant corporation a citizen of Pennsylvania. The answer was filed April 20, 1962 and admitted diversity of citizenship. Defendant agreed that plaintiffs were citizens of Florida at the time the complaint was filed in a pretrial stipulation filed December 31, 1962. Pretrial was held January 2, 1963. On May 7, 1963, de-

fendant filed a petition to amend its answer which stated that defendant on May 2, 1963 had discovered evidence that the husband plaintiff was a citizen of Pennsylvania on April 2, 1962, the date the complaint was filed. Defendant's petition also asked that the claim of Wayne A. Ramsey be dismissed. On May 7, 1963 an amendment to the answer covering this was ordered filed.[1] On May 31, 1963 the district court denied defendant's motion to dismiss the complaint of Wayne A. Ramsey on the ground that an issue of fact existed regarding his residence or citizenship when the complaint was filed. The order thereon stated that " * * * it appearing that there is an issue of fact raised with respect to *Plaintiffs'* residence or citizenship, and it appearing that the cause is on the current Trial List, it is ordered that the Motion be and the same hereby is denied without prejudice to consideration of said issue at trial or to such rulings as the Trial Judge may see fit to make with respect to order of proof or preliminary separate trial of the issue as to citizenship." (Emphasis supplied). On June 13, 1963, defendant filed an amended pretrial statement in which it said that it would prove that Wayne A. Ramsey had been a citizen of Pennsylvania when his complaint was filed. The statement detailed specific proof the defense would present on that point.

On June 14, 1963 plaintiffs filed a supplemental pretrial statement in which they said they would prove at the trial that they and their children were all citizens of Florida on April 2, 1962 and detailed the proofs they said they would submit in this connection. In addition, they added to their list of liability witnesses two names with a summary of the expected testimony of one of those witnesses. The defense moved to strike the new liability names and the evidence statement. The motion was heard August 14, 1963 and briefs were ordered filed. The court on September 10, 1963 denied the motion. On October 17, 1963, both sides stipulated that no alternate jurors would be called for the trial of this case and agreed if the number of jurors " * * * is reduced to eleven or ten, that the verdict of the jury will be accepted." They further agreed to waive the recording of the voir dire. The trial started October 17, 1963 and concluded October 25, 1963.

Immediately before the start of the trial on October 17, 1963, the attorneys for the parties moved that the court decide the diversity issue as a matter of law. The plaintiffs' attorney finally withdrew his motion. The judge denied the defense motion saying that he would treat this as a " * * * question of fact for the time being."

The next day the court, because of the stipulation of December 31, 1962 above referred to, ruled that diversity was an affirmative defense. A little later it stopped the defense cross-examination of Mr. Ramsey with reference to his residency at the time the suit was filed. The court said, "This is all out at the present time due to my ruling this morning that this becomes an affirmative defense."

On direct examination Mr. Ramsey, asked how long he had lived in Florida, said, "I bought my home down there two years ago." He gave the date as September 28, or 29, 1961. He said he sold his Pennsylvania home on August 28, 1961. He stated his reason for this was "We— my wife and I had decided to move to Florida." Mr. Ramsey's entire family consisted of his wife, himself and their two sons aged 12 and 16 respectively. In March 1962 he left Florida because of

1. "ORDER OF THE COURT
   "And now, this 7th day of May, 1963, upon motion of Duff & Doyle, Attorneys for Mellon National Bank and Trust Company, Defendant in the within action, it is hereby ordered that Paragraph 2 of Defendant's Answer be amended to read as follows:

"The averments contained in Paragraph 2 of the Complaint are denied with respect to Plaintiff Wayne A. Ramsey. On the contrary, Defendant avers that at all times material herein Wayne A. Ramsey was a citizen of the Commonwealth of Pennsylvania."

the employment situation there. He had a leave of absence from his Pennsylvania employer. He stated he went back to Florida in February and then gave the year as " '62" and repeated this. He meant 1963, as his counsel states in his brief. In any event regarding the following February he said "I didn't stay too long, because I went down at that particular time to check the work situation, plus I had to file my homestead rights in the State of Florida." His attorney said those rights were filed in March 1962.

The defense queried the court with respect to proofs of diversity being taken first " * * * because if at the end of that you decide there is no diversity, that is the end." The court answered, "I am not going to decide that. *I have already told you this is a question of fact that will go to the jury, unless you can show me by law it must be that.*" (Emphasis supplied).

After plaintiffs' case had closed, the defense called Mr. Ramsey for cross-examination as the first witness. He said he had been in Pennsylvania from March 15, 1962 to July 1963. He gave other details with respect to the general inquiry as to whether he had been a citizen of Florida or of Pennsylvania on the date his complaint was filed, April 2, 1962. There is no need for us to explore that testimony in depth at this time. There was also testimony regarding Mr. Ramsey's Pennsylvania employment records and the Pennsylvania school records of the Ramsey children.

After the close of all of the testimony, in denying the defense motion to dismiss, the court said to counsel for the defendant regarding the ground for the lack of jurisdiction:

"This court has not put the burden upon you to prove jurisdiction. It has put the burden upon you to prove residence after a stipulation had been filed in which there was an agreement that the residence of this plaintiff was in Florida."

As to the diversity question the court charged the jury:

"By federal law, certain cases may be tried in our United States District Courts. They require, among other things, that persons have diversity of citizenship. And this case comes into our court based upon diversity of citizenship between the plaintiffs and the defendant.

\* \* \* \* \* \*

"You will first, however, give consideration to the contention of the defendant that the plaintiffs were at the time of the filing of this action citizens of Pennsylvania and not of Florida. You will do this before you consider the other questions in this case, which are now placed before you.

"As I said before, the defendant contends that the plaintiffs are not citizens of Florida and were not on the date of the filing of this action, but are citizens of Pennsylvania and were, as of the time of the filing of the action. As I said before, this is an affirmative defense and the burden of proving this is upon the defendant, in the same way as I have explained to you the meaning of proof by the preponderance of the evidence.

\* \* \* \* \* \*

"Diversity jurisdiction in federal courts is dependent upon diverse citizenship of the parties. Though the Fourteenth Amendment declares that citizens of the United States are citizens of the state wherein they reside, it is quite settled that mere residence in a state is not enough for purposes of diversity, and that the more elusive concept of domicile is controlling."

Plaintiffs submitted at least five points for charge dealing with the merits of the diversity question which were affirmed. A sixth point which is not clear on its face as to whether it embraces said issue was also affirmed. Defendant submitted several points and two interrog-

atories on diversity, all of which were denied.

The verdicts as signed by all the jurors read:

"And now, to wit: October 25th, 1963, we, the Jurors empaneled in the above-entitled case, find in favor of the Plaintiffs, DOROTHY JEAN RAMSEY, in the sum of $15,000.00 and WAYNE A. RAMSEY, HER HUS-BAND, in the sum of $10,000.00, and against the Defendant, MELLON NA-TIONAL BANK AND TRUST COMPANY, together with costs."

It is true that the defense motion to amend its answer so as to contest the complaint's allegation of diversity of cit-izenship was not made until May 7, 1963. However, the sole and undisputed reason for that was the uncontradicted circum-stance that the defense did not discover the citizenship situation of Mr. Ramsey until within a week prior to May 7, 1963.[2] Once the defense had that in-formation it moved with the utmost promptness. Its petition at that time to amend the answer so as to include the diversity defense was not opposed before or after the amendment was allowed. The amendment to the answer was filed immediately and shortly thereafter an amended narrative pretrial statement particularizing its contention of no di-versity of citizenship was also filed. Fol-lowing that a supplemental pretrial state-ment was filed by plaintiffs. That an-swered the allegations regarding diver-sity in the amended defense pretrial statement. There was no objection to that part of the statement by the defense. The latter's only objection to plaintiffs' supplemental statement was that it in-cluded additional fact witnesses on the merits who the defense said were known to plaintiffs when they filed their original pretrial statement.

The record clearly shows and there is no contention by plaintiffs to the con-trary, that on October 17, 1963, about four months after the further pretrial statements of both sides had been filed, the trial did commence. And while there was disagreement concerning the order of proof with respect to the diversity of citizenship of plaintiffs, there was never any doubt in the mind of the trial judge or counsel for either side that this was a trial issue.

What was inadvertently overlooked and what counsel in fairness to the trial judge who had not handled the preliminary mat-ters, should have stressed to him, was the inescapable fact that due to the stated special circumstances, the answer had been properly amended to include the diversity defense, the additional defense pretrial statement required under the amended answer had been filed and the answering statement to that filed on be-half of the plaintiffs.

The suit thereafter continued on its due course for trial. When it was reach-ed, it was tried. The diversity issue at trial time was not under any cloud. It was squarely and fairly a complete part of the defense. The fact that this had not originally appeared in the defense answer had been passed on and resolved by the court six months prior to trial. It must follow that since the jurisdic-tion of the court over the suit was di-rectly denied by the amended answer, the fundamental principles governing this kind of action apply. As the trial court itself stated in its opinion, "Undoubtedly, the burden of proving diversity of cit-izenship is upon the plaintiff. McNutt v. General Motors Corporation, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); Jardine v. Intehar, 213 F.Supp. 598 (D.C. W.Va.1963)." See also Gallagher v. Phil-adelphia Transportation Co., 185 F.2d 543, 545 (3 Cir. 1950).

The district judge, under the impres-sion that because of the early defense consent to plaintiffs' diversity allegation, this was an instance where "the defend-ant had put the plaintiffs to rest on their burden * * * the circumstances had changed sufficiently to put responsibility

2. It is noted that the May 31, 1963 order denying the defense motion without prej-udice included both plaintiffs within its scope.

upon the defendant. When the defendant subsequently changed its mind as to the question of citizenship after it had lulled the plaintiffs into the belief that no proof would be required of them on that issue, it is my opinion that it then assumed the burden of this defense." The court cited our opinion in DiFrischia v. The New York Central Railroad Company, 279 F.2d 141 (3 Cir. 1960). That appeal turned on its own special facts in no way comparable to the admitted situation before us. Here, the court flatly submitted the diversity question to the jury but charged that body "As I have said before, this is an affirmative defense and the burden of proving this is upon the defendant, in the same way as I have explained to you the meaning of proof by the preponderance of the evidence." That statement in the true context of this litigation was clearly erroneous. Later in the charge the court rightly told the jury that diversity was a key issue which had to be decided before reaching the merits and that if the jury concluded there was no diversity that ended its function. Plainly a full new trial is indicated. It will therefore serve no useful purpose to examine the points raised in connection with the accident and injuries at this stage.

One other possible difficulty in connection with the diversity of citizenship point should be clarified now. The allegation of no diversity was made by the defense against the husband plaintiff. As we have earlier mentioned the inference from the record unmistakably suggests that the wife plaintiff had the same citizenship as her husband during the critical period. The order of May 31, 1963 declares that there is an issue of fact "with respect to *Plaintiffs'* residence or citizenship, * * *." (Emphasis supplied). Though we are not furnished with counsels' opening and closing statements it is evident that the trial proceeded on the theory that the husband and wife plaintiffs had the same citizenship on April 2, 1962. The court in a diversity excerpt from its charge above quoted instructed the jury "*You will first,*

*however, give consideration to the contention of the defendant that the plaintiffs were at the time of the filing of the action citizens of Pennsylvania and not of Florida.*" (Emphasis supplied). Plaintiffs' brief in this court states that the particular question on diversity before us is "*Whether there was diversity of citizenship between the parties * *.*" (Emphasis supplied). We have seen no assertion that Mrs. Ramsey's citizenship on April 2, 1962, differed from that of her husband. However, Mrs. Ramsey should be formally included in the diversity part of the answer. Since there is no element of surprise involved or anything else that would prevent an appropriate amendment, there is no reason why appellant should not make a motion to that effect after remand.

The judgment of the district court will be reversed and the case remanded for retrial on both the jurisdictional issue and the merits.