**In re John W. KOONS, Jr., Debtor.**

**Bankruptcy No. 92–10394(MVB).**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Sept. 25, 1998.

Kermit A. Rosenberg, Arlington, VA, for Debtor.

John W. Guinee, Jr., Reston, VA, Trustee.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

In the instant case we consider the location of the debtor's domicile for the purpose of claiming exemptions. We have jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334 (1994). Moreover, we conclude that this is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(A) and (B).

The basic issue is whether, at the time the debtor's involuntary petition was filed, the debtor was a domiciliary of the State of

Virginia. The involuntary petition was filed against the debtor on January 28, 1992. The debtor claims that at that time, he was domiciled in Florida and therefore entitled to utilize the Florida state exemption statute. The objecting Creditors argue that at the time of the involuntary, the debtor was domiciled in Virginia and limited by the Virginia exemption statutes.

■ Any property not able to be exempt becomes property of the estate to be distributed to creditors. 11 U.S.C. § 522 (1994). Under Virginia law, only a portion of the debtor's Individual Retirement Account ("IRA") would be deemed exempt based on his age, see Va.Code § 34–34, whereas, under the Florida exemption scheme, the debtor's entire IRA would be exempt, see Fla. Stat. Ann. § 222.21(b) (West 1997); In re Luttge, 204 B.R. 259, 263 (Bankr.S.D.Fla.1997). In this case, the debtor was 48 years old at the time the petition was filed and therefore, based on the Virginia statute, can only exempt $32,189.00. See Va.Code § 34–34.

The debtor is the president, director and shareholder of several corporations and either a general partner or limited partner in family-owned and operated partnerships. Automobile dealerships are the businesses in which the debtor has an interest and are located in Northern Virginia. Many of these businesses filed for protection under the Bankruptcy Code in mid- to late October 1991. Thereafter, on January 28, 1992, an involuntary Chapter 7 petition was filed against the debtor and the order for relief was entered on March 4, 1992. The case was converted to one under Chapter 11 by order dated March 31, 1992. Thereafter, on motion of the United States Trustee and by order dated March 5, 1996, the case was once again converted to a case under Chapter 7. The debtor received his discharge on October 20, 1996.

The debtor claims that he resided in Florida for approximately 15 years prior to the filing of the bankruptcy petition. At the time the involuntary petition was filed and the summons and petition were served on the debtor, he considered Fort Lauderdale, Florida his home. He was served in Virginia but was staying with family members and did not have a separate place to stay in Virginia. He testified that he intended to remain living in Florida for the rest of his life. Also, at the time, he held a valid Florida driver's license that had been issued in 1984. When questioned, the debtor stated that he had never filed a Florida State Income Tax Return because a state income tax return is not required to be filed in Florida.

The debtor lives in a condominium in Fort Lauderdale, Florida which, at the time was owned by the family partnership, Koons Plaza Development Company. The property was originally purchased in the 1970's with the intent that every family member would have access to the property at his or her convenience. As the years progressed, the debtor was the only family member continuously using the condominium. Eventually, the debtor considered the condominium his home and left all of his clothes and some of his personal belongings at the house.[1]

In 1989, the debtor returned to Virginia and eventually rented a house in Vienna, Virginia. He testified that he returned to the state in an attempt to save the businesses. During this time, the debtor worked nearly two to three weeks per month, seven days each week. When he was not working, and the opportunity arose, he and his wife returned to the condominium in Florida where he had left his clothes and some personal property. Throughout the period that he was in Virginia, the debtor also continued to pay the utility bills for the residence in Florida.

Then, on or around October 22, 1991, despite the debtor's efforts, the businesses filed the bankruptcy petitions. The debtor immediately returned to Florida and all of the debtor's furniture and personal belongings that had been in Virginia were moved to Florida within days of the business filings.

■ Section 522(b)(2) of the Bankruptcy Code provides that where property is exempt

---

1. The debtor did not pay rent or any other compensation to the partnership to use the premises until after the petition was filed.

under state law, the applicable state or local law is that "place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place...." 11 U.S.C. § 522(b)(2). The issue of domicile is a fact-based analysis that is not disposed of by one element but rather depends on a variety of factors that when reviewed as a whole, evidence an intent to be domiciled in a state. *Gambelli v. United States,* 904 F.Supp. 494, 497 (E.D.Va.1995) (stating registering one's car in that state, obtaining a driver's license in that state, joining community groups, and testifying to one's intention to remain in the state are indicia of domicile), *aff'd,* 87 F.3d 1308 (4th Cir.1996); *State–Planters Bank and Trust Co. v. Virginia,* 174 Va. 289, 6 S.E.2d 629, 631 (1940); *Bloomfield v. City of St. Petersburg Beach,* 82 So.2d 364, 368 (Fla. 1955) (setting forth a variety of factors relied on by the court to determine whether a party was domiciled in the state); MICHIE'S JURISPRUDENCE, *Conflict of Laws, Domicile and Residence* § 9 (stating "[t]he intent necessary for a change of domicile must be determined in the light of all the evidence, the circumstances, and the reasonable inferences to be drawn therefrom").

■ In Virginia, to establish a domicile, the party must have a physical presence in the state and an intention to remain in the state for an unlimited time. *Smith v. Wellberg (In re Wellberg),* 12 B.R. 48, 50 (Bankr. E.D.Va.1981) (citing *Smith v. Smith's Ex'r,* 122 Va. 341, 94 S.E. 777 (1918); *Layton v. Pribble,* 200 Va. 405, 105 S.E.2d 864 (1958)); *State–Planters Bank,* 6 S.E.2d at 631; *see Swift & Co. v. Licklider,* 7 F.2d 19, 21 (4th Cir.1925).

The intent of the person is often in question. It must frequently be determined from the declarations and conduct of the person in light of the attending circumstances. When the evidence is conflicting, the opposing facts must be balanced one against the other. Slight circumstances must often decide the question. The solution of the question depends upon the preponderance of the evidence in favor of one place or the other. All acts indicative of the purpose must be carefully scrutinized. *State–Planters Bank,* 6 S.E.2d at 631.

■ It is well established that a person may have more than one residence, but only one domicile. *Gambelli,* 904 F.Supp. at 496; *Wellberg,* 12 B.R. at 50; *see Swift & Co.,* 7 F.2d at 20. A change in residence without a change in an intent to return to the original state does not indicate a change in domicile. *Wellberg,* 12 B.R. at 50–51 (citing *French v. Short,* 207 Va. 548, 151 S.E.2d 354 (1966); *Lewis v. Splashdam By–Products Corp.,* 233 F.Supp. 47 (W.D.Va.1964); *Jardine v. Intehar,* 213 F.Supp. 598 (S.D.W.Va.1963)). Unless a person's intent changes, the domicile is not altered. *Id.*

■ The burden of proving a change in domicile is on the person alleging the change. MICHIE'S JURISPRUDENCE, *Conflict of Laws, Domicile and Residence* § 9. In this case, it appears that the debtor was domiciled in Florida prior to 1989. Therefore, the creditors have the burden to prove that the debtor intended to change his domicile from Florida to Virginia. We conclude that the creditors have not met this burden.

Although the evidence is somewhat conflicting, we cannot find that during the 180 days prior to the filing that the debtor intended to remain in Virginia for an unlimited period of time, or that his intention to return to Florida and remain there had changed. The debtor did have a physical presence in Virginia. He testified that he returned to Virginia from Florida in 1989 in an attempt to resuscitate his businesses. Upon this return he rented a home in Vienna, Virginia for approximately a one-year term. The debtor worked extensively in Virginia, often 80–90 hours per week, seven days each week. However, he continued to return to Florida whenever the opportunity arose and there is uncontroverted testimony that he maintained most of his personal belongings in Florida. Clearly this evidences an intention to return to Florida and not that he intended to change his domicile to Virginia.

We understand that given the circumstances it is unlikely that the debtor would readily admit that he intended to remain in

Virginia permanently. There certainly is evidence to validate the argument that the debtor resided in Virginia. For example, the debtor rented a home in Virginia for at least one year within the 180 days prior to the filing; he filed Virginia income tax returns for the years 1989 and 1990 and a Virginia tentative tax return for 1988; on his 1990 Federal income tax return he listed a Virginia address; and the debtor signed under penalty of perjury Schedule H of a related bankruptcy case, where he listed himself as co-debtor with his address at the Vienna, Virginia location. Additionally, as indicated above, the debtor spent a majority of his time in 1990 and 1991 in Northern Virginia. However, these facts do not rise to a level of showing an intent to remain in Virginia or to have Virginia deemed his domicile.

We are persuaded by the facts that prior to 1989 the debtor was a Florida resident, he maintained a residence in Florida for 15 years even though he was also present in Virginia; he holds a Florida driver's license; a majority of his personal items were left in Florida even when he was living in Virginia during 1990 and 1991; and he returned to Florida whenever he had the opportunity. Further, there is no testimony that states, or even suggests, that he was a Virginia resident whereas at all times the debtor asserted that he lived in Florida and intended to return there. Finally, the debtor asserts that he left Virginia and returned to Florida in October 1991 after all of the businesses filed for bankruptcy. In fact, the debtor states that he did not return to the dealerships after October 22, 1991.

There is no evidence to support the contention that the debtor intended to change his domicile. Accordingly, we must conclude that the debtor was and is domiciled in Florida and entitled to take advantage of the Florida exemption statute, which includes exempting all of the IRA funds.

A second issue was raised at oral argument concerning whether an interest that the debtor had in a trust created under the terms of the debtor's father's will was property of the bankruptcy estate. Both parties conceded that this court had previously ruled that the interest did not become property of the estate and therefore cannot be exempted from the bankruptcy estate. Accordingly, we make no ruling on this matter.

A separate order will be entered consistent with this opinion.